Thank you, Judge Smith, and may it please the court. Your Honors, Andres Vargas argues that this court should vacate his sentence and remand for resentencing because the guideline that would make him a career offender is unambiguous in that it does not cover his past and present drug conspiracy convictions. And the Sentencing Commission commentary that would change that is not entitled to judicial deference after the Supreme Court clarified in Kaiser v. Wilkie that agency interpretations are only deferred to when an agency is interpreting an ambiguous regulation. Now, there are two overarching issues that we need to talk about this afternoon. The first is, can this panel even reach Mr. Vargas' deference argument? We say it can. The prior decision, no prior panel of this court has ever given reasoned consideration to the deference argument that we've pressed here. But even if a prior panel had closed the door, Kaiser unequivocally has opened that door by raising the bar to the deference standard in all of its applications. And if this court agrees with either of those two points, then we have to get to the second point, or the second question. And that is simply, are we right? Is our deference argument correct? Again, we say yes. Section 4B1.2b is unambiguous. Inchoate offenses, like conspiracies and attempts, are not covered. Under Kaiser, that's the end of the matter. Because under Kaiser, no ambiguity means no deference. And so I'll turn first to the first question that we have to get to here. And that our position is simply that this court, that the slate is clean, pardon me, for this court to address our deference argument for two independent reasons. And the first of those reasons is that the deference issue we pressed here is not foreclosed by United States versus Lightbourne. In that decision, the court addressed only the sentencing commission's statutory authority to promulgate a guideline that includes conspiracy offenses. It did not address the deference issue, whether or not it's appropriate for the commission to have done so through commentary. I'm sure you're going to tell us why we should overlook Kendrick, right? Yes, Judge Smith. You should overlook Kendrick because, and I think the best way to do that is to point to the decision in Ochoa-Salgado versus Garland. In that case, this court recently clarified that the rule of orderliness depends on the pressed or passed rule. And specifically in that case, the court was dealing with a prior party's prior concession, explicit concession of an issue, and the panel's reliance on that concession. I think you can analogize to what happened in Kendrick with the prior party's concession  The Kaiser argument wasn't raised in Kendrick. So we still have the Kaiser argument regardless. But even as to the Stinson argument that was raised in Kendrick, Kendrick dismissed that argument solely on the basis that Lightborn forecloses this. And so that is the recent panel's reliance on a prior panel's mistaken understanding, or really an assumption that the prior panel had passed on an issue that was never even pressed, let alone passed in that case. And so we think that you should and could analogize to that. Because Kendrick doesn't give any thoughtful consideration to the question whether the guideline is, or whether the commentary is a plainly erroneous or inconsistent reading of the guidelines text. It simply just says Lightborn, and then that's the end of the day. So it seems to me that a reasonable argument could be made that these various precedents are sort of wrapped around the axle, and that it's an important decision such that it's something that this court should review in bank, just to clear everything up absolutely to eradicate any foggy interpretations of these cases. Judge Smith, you certainly could take this case en banc. I couldn't stand here and say it's not an important issue after having said it was about 10 times in my required briefs. So of course, this is an important issue, but it doesn't need en banc treatment because we think that it's clear that Lightborn didn't press or pass on this issue. Or it wasn't pressed, and Lightborn did not pass on the issue. But Judge Smith, even if you didn't want to say anything about your prior colleagues' assumptions in Kendrick and other cases, you could simply reach this issue and hold that the slate is clean for the exact same reason that at least three other circuits have relied upon, and that is Kaiser cleaned the slate itself. It qualifies as having unequivocally abrogated any prior decision that implicitly decided that the commentary that adds inchoate offenses to Section 4B 1.2b's definition of controlled substance offense is not plainly erroneous or inconsistent with that. Was that presented in Kendrick? I mean, Kendrick, they certainly made the argument that the commentary was not applicable in Kendrick. The defendant did. The defendant did, but the defendant did not cite Kaiser in the opening brief, the reply brief, or either the panel rehearing petition or the en banc rehearing petition. So Kaiser is, and really, the panel in Kendrick didn't engage with Kaiser at all either, just like many other panels haven't engaged, including the TAB decision that we fought about in the briefs from the Second Circuit. Those decisions haven't looked into whether Kaiser unequivocally abrogated. I think I could point you to the Fourth Circuit's recent case in Campbell, the one that I addressed in my January 28 J letter.  said, look, we reject the government's argument that our version of Lightborn actually decided this issue. But then it said, even if that prior decision had decided this issue, Kaiser has fatally undermined. I guess that's the formulation. Kaiser, of course, didn't deal with the guidelines. I know you can see that, of course. You're saying it changed the whole framework for how we evaluate deference to interpretations of regulations. But I'm not, are sentencing guidelines really akin to a regulation? Because a regulation is binding law. I mean, if it's faithful to the statute. A regulation is binding law. The guidelines are just that now. They're just guidelines. They're just advisory, as is, of course, the commentaries just advised. So when you're talking about two things that are advisory, how do we know that Kaiser really addresses the guideline situation, which isn't binding law, to the extent that we can say it allows us to overrule prior cases? Well, Judge Costa, the way that we know, first, I'll get to the reason why we have to say that. And that's because Stinson. Stinson remains good law. And Stinson explicitly held that the guidelines not only are akin, it said they must be treated as if they were an agency's interpretation to a legislative rule. Now, I take your point. Wasn't that when they were binding guidelines pre-Booker? It is. It is. But they're just recommendations. They are recommendations. But the analogy still holds, and certainly in several respects. Because the guidelines have to go through notice and comment by statute. The guidelines are obviously very important, even though they are advisory. Pew and the line of cases after that demonstrate how the anchoring effect that they have. They're the lodestar. And so I think even Stinson said the analogy is imprecise, but it still holds. And importantly, Judge Costa, the government did 28J, the Moses case. Of course, I've explained why we think that that case isn't precedent in the Fourth Circuit right now anyway. There's also serious reason to think it's about to go away. But importantly, I noted in my response that the Fourth Circuit had asked the government to respond to Mr. Moses's petition for en banc rehearing. The government has filed that response, and it joins in the request for rehearing. It says panel rehearing, not en banc. But it says because the official position of the United States, and of course, Ms. Maness will address what the government's position is. I don't purport to speak for her, of course. But citing to the Solicitor General's position in a brief in opposition to certiorari in United States versus TAB, the government says, we agree that Kaiser is the determining test for determining whether a particular commentary is entitled to deference after going forward. And so, and of course, you don't have to accept the government's concession, even if that is their position. But I think it is a sound position, because Stinson made clear that this is the most apt analogy. And there's a bunch of reasons, again, why we don't allow the sentencing commission to just be this free-floating agency. Of course, Mistretta discussed all of those things, right? And so there's powerful reasons why it makes sense to hold the commission accountable in the way that this does in a certain respect when we're talking about requiring deference. And I think that as to the point that Kaiser raised the bar, again, taking into account the government's position in other cases and everything else, I think just to reinforce, Chief Justice Roberts made clear in his concurrence in the fifth vote that genuine ambiguity is a prerequisite to deference now. And that was not the case before. So it's just like the situation you had with Mathis. In every situation that the modified categorical approach happens or is applicable, unanimity is a prerequisite to finding divisibility and for the court to be able to narrow based on things in the indictment. Well, it's the same thing here. Genuine ambiguity is the prerequisite for a court to defer to an agency interpretation. But counsel, I mean, so there's already a circuit split on the issue, right? There was a circuit split on the meaning of this commentary and the interplay with the guideline before Kaiser, right? To a certain extent, yes. So to maybe a greater extent today, there's still circuits are grappling with this in different ways. I mean, the more you mention the Chief Justice and back to Judge Costa's point, isn't this a question for the Supreme Court to resolve? I mean, if we took this in bank and we overruled Lightborn to the extent we need to do that, we may have clarity in the circuit or we may not. There doesn't seem to be clarity nationwide. Isn't that for the Supreme Court to handle so that they clearly say it so we're not guessing it whether they're just hinting or not? Judge Wilson, this is not a situation where we're having to deal with guessing what the Supreme Court would do. The Supreme Court has told us what the test for deference is. The test for deference. Agency regulations. But for agency regulations is to say for the sentencing guidelines. And we know that from footnote three in Kaiser because Kaiser made clear. Kaiser cited Stinson as one of the cases that had previously applied the plainly erroneous or inconsistent formulation that it was discarding in that case or that had led to reflexive deference in the court's words. And then the court again cited that later in the opinion. It cited back to footnote three saying if we were to accept Mr. Kaiser's position, because remember Kaiser wanted to get rid of deference altogether. If we were to accept Kaiser's position, we'd have to overrule all that legion of cases, including Stinson. So even Kaiser understood Stinson to be of a piece with all the prior cases. It doesn't matter that it's the Sentencing Commission as opposed to the VA, the DOT, EPA. All agencies are treated the same under this deference framework. And that's why we think that you should get to the merits. And if you do get to the merits, you don't have to take our word for it that section 4B1.2b is unambiguous and therefore doesn't cover in COHEA defenses. You can look to the considered opinions of the en banc Third Circuit, the en banc Sixth Circuit, the Fourth Circuit panel in Campbell, and the DC Circuit panel in Winstead. Each one of these courts has looked at this language and said, you know what? The plain text is the farthest we need to go. This guidelines defines what controlled substance offense means. And of course, that's important. Means is exclusive. It's not like includes. It suggests an exhaustive list. And so all of those 10 offenses that are listed in the definition are the exhaustive list. And that's why we think that the plain language resolves this. But this is a conspiracy conviction we're talking about classifying. So I understand your argument for why it's unambiguous that it excludes conspiracy. What about aiding and abetting, though? Because aiding and abetting makes you liable as the principal. You're liable under the substantive statute. So does your argument extend to aiding and abetting? That is a complicated issue, Judge Costa. But I do want to give you a very specific answer, a detailed answer. Our argument does apply to the commentary in as much as it says aiding and abetting in with attempt and conspiracy. You don't defer to that commentary because it's adding. It's not even interpreting. It's adding. But of course, I'm going to have to say that issue isn't presented here. So please don't decide it. But if I were pressed, I think that I would have to agree that aiding and abetting is probably the type of thing that is actually included in the text of the guideline by the mere inclusion of the substantive offenses. And I could point you to Duanez-Alvarez. Gonzalez versus Duanez-Alvarez. In that case, the Supreme Court held that generic theft in the INA under the aggravated felony definition does include aiding and abetting necessarily. So that's why it's different. Attempt and conspiracy are completely separate offenses. And I'll save my time for rebuttal. Yes, you've saved time for rebuttal. Thank you. Ms. Maness? Thank you, and may it please the court. Audrey Maness for the United States. This court should affirm the district court's sentence below. The district court correctly held that Vargas' drug conspiracies qualify as controlled substance offenses under the career offender guideline. And it based that decision on 15 years of precedent out of this court, starting with United States versus Lightborn and continuing through no less than half a dozen cases in the past year, including United States versus Kendrick. This court's rule of orderliness requires that the panel not overturn a prior panel's decision absent an intervening change in law. And Lightborn's holding that drug conspiracies are lawfully included as controlled substance offenses has been followed time and time again. That rule of orderliness applies not just to the holding, but also to the necessary analysis and to subsequent decisions that have either interpreted Lightborn, spoken to it, and even expanded on it. So to the extent that this court views Lightborn as not directly answering the question, is the guideline entitled to deference, it can look to Kendrick, which does hold that. In Kendrick, there was a significant discussion about Stinson in both the briefing and at argument. The opinions in Kendrick cites the commentary, but it doesn't really analyze the argument that the commentary clashes with the text of the guideline. Correct, Your Honor, but it was presented to the court. And the court determined that the commentary is included as part of the guideline and conspiracies are a controlled substance offense. So that conclusion, what Mr. Vargas is asking for today is for this court to overturn that. Well, assume our uendo we had no precedent. Why does the guideline allow conspiracies to be counted? Assuming that there was no precedent, the government's position is that Kaiser is relevant, yes, but the guideline is still ambiguous on the term prohibits. And that's been explained in the government's briefing in opposition to the cert petition in TAB, to the Supreme Court, and somewhat in the recent filings in the Moses case in the Fourth Circuit. But the court does not need and should not reach that issue here because of Lightborn and because of Kendrick. And also, Kaiser is not an intervening change of law. Kaiser itself makes very clear that it is not trying to rock the boat. It has a significant discussion of the importance of precedent. And when it talks about the legion of cases that have relied on Seminole Rock, including Stinson, it's saying, we don't want courts to relitigate all of this. And at 2422 in the Supreme Court Reporter, it's very clear that we're not trying to rock the boat. We're just here clarifying. It does not want courts revisiting all of these cases that have applied Seminole Rock in the past. And that's what makes it different also from Mathis, which I know the appellant has analogized to, is Mathis set forth a very clear rule. Here is what sentencing courts are to do. That's not what Kaiser does. Kaiser says, no, we're affirming our prior precedent. Here's some clarifications. And we don't want to rock the boat. And that's why Kaiser is not enough of a big decision for this court to step in and say, oh, we need to revisit all of the cases that have applied Stinson. That's a lot of cases that this court would be revisiting. If it does want to revisit specifically Lightborn and Kendrick, it needs to do so on Bonk. And if there's nothing further from your honors, I'll rest on the briefing. Thank you. I just have a couple points on rebuttal. First, I understand, I agree with Ms. Mainis. Kaiser did note that it did not envision relitigation of every single deference precedent. But importantly, that's because, as the government argues in many different cases, and indeed is arguing in that Moses case right now, that's because the end result is likely going to be the same in many instances. Many times, courts were deferring because there was actually an ambiguous regulation. And so even though they were applying the plainly erroneous or inconsistent test, of course, the same result would apply. And we don't expect litigants to re-raise that where there's genuine ambiguity. But I do want to point out that Kaiser did also recognize explicitly and was sanguine with the idea that deference often, and this is the court's word, often wouldn't be given based on this new, more strict formulation of the deference standard. So it's not surprising that under that standard, there would be situations like this case, where there's an unambiguous regulation, and the regulatory body has just, in an interpretation, expanded that beyond its substantive scope, which is clearly what's happening here. Have you overturned any case based on Kaiser? I'm not talking about sentencing guidelines. It's the whole apparatus of administration. I have not found one yet, Judge Costa. I also haven't found one where the issue has been engaged. So this may be the first where the court would have to engage that issue. And of course, we think that you should. I'll turn next to the government's prohibit argument, because Ms. Maness is right. That is the primary argument that the SG relied on in its brief in opposition in TAB. The best version of that argument, I think, is that the term prohibit can include, of course, forbid by authority or command. But it can also include preventing or hindering. And so because the guideline, or because the commentary, includes in co-aid offenses, that suggests that the term prohibit in the actual guideline is ambiguous in that respect. But there's three really fundamental flaws with that reasoning, and I'd like to go through each one of them, because it's important. First, I'd point you to United States versus Havis, when the en banc Sixth Circuit said, this is not an interpretation. This is addition. The commission in this application note is not telling us what controlled substance offense means, or interpreting what controlled substance is, or prohibits means. It's telling us more offenses are included. And you can look at the actual language of the application note. It says, the definition includes aiding and abetting, attempt, conspiracy of such offenses. Such offenses, meaning the offenses listed in the guideline. So it's not even an interpretation that we're dealing with here. We're just talking about straight up expansion and addition. The second reason I think that that is incorrect is what the Fourth Circuit said in its Campbell decision. You cannot create ambiguity in the guideline by pointing to the interpretation of it. The only reason that they would have cause to interpret the guideline is if it's ambiguous in the first place. So as the SG does, pointing to the actual interpretation that's come afterwards to create the ambiguity is backwards. And my last point is that it's wrong even on its face under a normal textualist approach to the statute. And that's because what the SG overlooks is that the term prohibit, of course, has to be given its plain meaning. But it also has to be looked at within its context. And the context here is very clear that we're talking about the forbid sense of prohibit and not the prevent sense. First, look at what's doing the prohibiting, an offense. An offense is doing the prohibiting. We think of offenses as in laws. Laws forbid people from doing something. But unfortunately, as we all know and why we're standing here today, they do not prevent people from doing illegal conduct. So I can give you an analogy. When I'm playing Lawyer League men's above 30 basketball on Wednesdays, when I box somebody out, I am preventing them from getting a rebound. I am stopping them from getting that rebound. And so it would be normal for a person to say, he's prohibited that person from getting the basketball. But if I was to turn around to the guy I'm guarding and say, I forbade you to go get that basketball, he's going to push me aside and go get it. So in context, we know that's preventing, hindering. But this is different. And I could point you to, I guess, the best analogy, a murder statute. A murder statute does not prevent anybody from taking the life of another with malice of forethought. But a murder statute absolutely does forbid by authority or command taking the life of another with malice of forethought. We think that it's clear and obvious that this context in which this term, prohibit, exists is the latter one. And for these reasons, we ask this court to take it. Your time has expired. Yes, thank you. Your case is under submission. Case Murphy.